UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TYRONE BRIMAGE,<br><br>Defendant | Criminal No.   25-cr10020<br><br>Violations:<br><br><u>Counts One and Two</u>: Bank Fraud<br>(18 U.S.C. § 1344)<br><br><u>Counts Three through Five</u>: Wire Fraud<br>(18 U.S.C. § 1343)<br><br><u>Forfeiture Allegation</u>:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461) |

## INFORMATION

The United States Attorney charges:

### General Allegations

1.      Defendant TYRONE BRIMAGE ("BRIMAGE") is a resident of Massachusetts.

2.      FAST Enterprises is a company that provided software and data hosting services in Colorado and Virginia for the Massachusetts Department of Unemployment Assistance ("DUA") for administration of its Pandemic Unemployment Assistance ("PUA") program.

3.      Capital Plus Financial ("CPF") is a financial institution based in Texas.  It is an approved lender of Paycheck Protection Program ("PPP") loans.

4.      The affected banks are financial institutions within the meaning of 18 U.S.C. § 20, including Eastern Bank and Citizens Bank, N.A.

1

*Pandemic Unemployment Assistance and Paycheck Protection Program Background*

5.      The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  The CARES Act in part created a temporary federal unemployment insurance program, PUA, which provided unemployment benefits for individuals who were not eligible for other types of unemployment benefits, including those who were self-employed, independent contractors, or gig economy workers.

6.      The Massachusetts DUA administered and managed the PUA program in Massachusetts.

7.      Massachusetts residents applied to DUA for PUA benefits through an online portal over which they submitted personally identifiable information ("PII"), including their first and last name, Social Security number ("SSN"), date of birth, and residential and mailing address.  In addition, claimants selected a preferred payment method: direct deposit or payment of their benefit onto a debit card.  Claimants also provided a phone number and email address to be used by DUA to provide updates, contact the claimant, and for authentication purposes. Claimants had to certify that the information in the PUA application was accurate and that answers to all questions were true and correct.  PUA claims submitted to DUA online were processed via servers located in Colorado.

8.      The CARES Act also authorized forgivable loans to small businesses and non-profits for job retention and certain other expenses through the PPP.

9.      To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications.  In the PPP loan application, the small business, through its authorized representative, had to state, among other things, its number of employees and its average monthly payroll expenses.  These figures were used to calculate the amount of a PPP loan that the business was eligible to receive; typically, a business was eligible to receive a loan equal to two-and-a-half times its average monthly payroll expenses.  In addition, businesses applying for a PPP loan had to provide documentation of their payroll expenses.

10.     A PPP loan application had to be processed by a lender authorized by the U.S. Small Business Administration ("SBA").  If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100 percent guaranteed by the SBA.  Data from the loan application was transmitted regularly by the lender to the SBA in the course of processing the loan.

11.     PPP loan proceeds had to be used by the recipient business on certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be forgiven entirely if the business spent the loan proceeds on these permissible expenses within a designated period and used a certain percentage of the PPP loan proceeds on payroll expenses.

<u>Overview of the Multiple Schemes to Defraud</u>

12.    On or about July 23, 2020, BRIMAGE submitted a fraudulent PUA application with falsified employment information, and from on or about August 6, 2020, to November 25, 2020, BRIMAGE received $21,279 in funds.

13.    On or about October 21, 2020, BRIMAGE attempted to mobile deposit a fraudulent City of Boston check for $16,427.23 into his Citizens Bank, N.A. account.

14.    On or about November 16, 2020, BRIMAGE submitted a fraudulent PUA application with a false social security number, and on or about November 18, 2020, BRIMAGE received $21,879 in funds.

15.    On or about May 13, 2021, BRIMAGE submitted a fraudulent PPP application with falsified statements regarding his criminal history, and on or about June 8, 2021, BRIMAGE received $20,832 in funds.

16.    From on or about July 19, 2023, to July 25, 2023, BRIMAGE, and others known and unknown to the United States Attorney, opened a bank account at Eastern Bank to deposit a fraudulent check; BRIMAGE, and others known and unknown to the United States Attorney, then withdrew the fraud proceeds from the account at a bank ATM.

<u>Schemes to Defraud</u>

<u>First PUA Claim</u>

17.    Beginning on or about July 23, 2020, to November 16, 2020, BRIMAGE devised and executed a scheme to defraud and to fraudulently obtain pandemic relief funds by submitting false and fraudulent PUA applications to DUA for unemployment benefits.

4

18.     On or about July 23, 2020, BRIMAGE submitted a PUA claim through the DUA portal with BRIMAGE's name, date of birth, address, and other personal identifying information, including his social security number.

19.     BRIMAGE's application falsely stated that BRIMAGE's employment was first impacted by COVID-19 pandemic on March 3, 2020, and certified that "a member of [his] household has been diagnosed with COVID-19" and that he ['didn't'] have a recent history of full-time work and [he] was scheduled to start a job with a new employer.  [He] cannot start that job, or the offer was withdrawn as a result of COVID-19."  BRIMAGE certified that his total income in 2019 was $0.

20.     At the time that BRIMAGE alleged that his employment was impacted by COVID-19, BRIMAGE was incarcerated at the Norfolk County Jail in Massachusetts, from February 25, 2020, to June 25, 2020.

21.     BRIMAGE's application further requested that the PUA benefits be deposited into his Citizens Bank account ending in 3134.  According to Citizens Bank, the account ending in 3134 was in the name of "Tyrone Brimage," with BRIMAGE's SSN and address.

22.     On or about the same day, July 23, 2020, DUA placed an Identity Verification Issue on the claim.  On or about July 27, 2020, BRIMAGE responded to the Issue and uploaded additional identifying information: (1) a picture of the front and back of his social security card; (2) a picture of the front and back of his Massachusetts Identification Card; and (3) a selfie picture of BRIMAGE holding his Massachusetts Identification card.

23.     Based on the information submitted to DUA, BRIMAGE's claim was approved on or about August 6, 2020.

24.     On or about October 27, 2020, the payment preference in BRIMAGE's DUA claim was updated to request that benefits be deposited into a Stride Bank account ending in 8654.  According to Stride Bank, the account ending in 8654 was in BRIMAGE's name, SSN, and address.

25.     In total, from on or about August 6, 2020, to November 25, 2020, DUA paid BRIMAGE $21,279.

26.     On or about December 2, 2020, DUA denied the claim, noting, "Claimant has multiple fraudulent claims with different SSNs."  On or about December 3, 2020, DUA issued a Notice of Non-Monetary Issue Redetermination—Identity Verification, informing BRIMAGE that he did not meet the eligibility requirements for PUA.

27.     Based on this determination, DUA stopped all payments on BRIMAGE's claim.

28.     On or about April 15, 2021, DUA placed an incarceration issue on the claim identifying that BRIMAGE was incarcerated as of March 3, 2020.

City of Boston Check

29.     On or about August 8, 2020, BRIMAGE opened a Citizens Bank account ending in 5429.  According to Citizens Bank, the account ending in 5429 was in the name "Tyrone Brimage," with BRIMAGE's SSN and address.

30.     On or about October 21, 2020, BRIMAGE attempted to mobile deposit a check from the City of Boston for $16,427.23 into his Citizens Bank account ending in 5429.

31.     On or about October 22, 2020, Citizens Bank confirmed the check to be fraudulent.

32.     According to the City of Boston, the sequence on the check is not a valid City of Boston sequence number.  Moreover, the account number on the check is from the City's payroll account, and BRIMAGE has never been an employee of the City of Boston.

Second PUA Claim

33.     On or about November 16, 2020, BRIMAGE submitted a second PUA claim through the DUA portal with his name, date of birth, address, and other PII, including a falsified SSN with altered second and third digits.

34.     In this application, BRIMAGE claimed that on March 2, 2020, he "was diagnosed with Coronavirus Disease 2019 (COVID-19) or was experiencing symptoms of COVID-19."  In contrast to his first application, BRIMAGE certified that his income in 2019 was $10,000.

35.     BRIMAGE requested his PUA benefits be deposited into an Eastern Bank account ending in 6399.  According to Eastern Bank, the account ending in 6399 is in BRIMAGE's name, real SSN, and address.

36.     On or about the same day, November 16, 2020, DUA placed an Identity Verification Issue on the claim.  In response to the Issue, BRIMAGE uploaded additional identifying information: (1) a picture of the front and back of an altered social security card; (2) a picture of the front and back of his Massachusetts Identification Card; and (3) a selfie picture of BRIMAGE holding his Massachusetts Identification card, different than the selfie in Paragraph 22.

37.     On or about November 17, 2020, DUA approved BRIMAGE's claim. On or about November 18, 2020, DUA paid BRIMAGE $21,879.

38.    On or about December 2, 2020, DUA stopped the claim and noted, "Claimant has multiple fraudulent claims with different SSNs."  On or about December 3, 2020, DUA Issued a Monetary Issue Redetermination—Identity Verification informing BRIMAGE that he does not meet the eligibility requirements for PUA.  Based on this determination, MA DUA stopped all payments on this claim.

PPP Claim

39.    On or about May 13, 2021, BRIMAGE submitted a PPP loan to CPF for "payroll costs, rent/mortgage interest, utilities" for what he claimed was his barber shop.  BRIMAGE further provided his business' total gross income in 2019 was $101,063.

40.    CPF approved the loan, and on or about June 8, 2021, $20,832 was deposited into BRIMAGE's Eastern Bank account ending in 6399, which is the same account BRIMAGE used to receive his funds from his second PUA claim.

41.    Question six (6) of the application read, "Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if any individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgement)?  Initial here to confirm your response to question 6."

42.    BRIMAGE digitally selected "NO" to answer question six (6) and digitally initialed "tb." BRIMAGE also signed the application in the "Signature of Authorized Representative of Applicant" section "tyrone brimage."

8

43.     According to BRIMAGE's Board of Probation record, BRIMAGE has been previously convicted of the following felonies:

      a.    Credit card fraud over $1,200 in the Central Division of the Boston Municipal Court on February 28, 2020 (Dkt 1901CR002708A); and

      b.    4 counts of forgery of a promissory note in the Roxbury Division of the Boston Municipal Court on February 13, 2020 (Dkt 1902CR001182C-F).

44.     Moreover, prior to the PPP funding, the majority of debits in his Eastern Bank account ending in 6399 do not appear business related.  From November 2020 to June 2021, the debits include numerous CashApp transfers, purchases at Target and Saks, cash withdrawals, food purchases, and rideshare fares.  The credits include PUA funds.

45.     After receiving the $20,832 on or about June 8, 2021, BRIMAGE used the money for CashApp transfers, food purchases, purchases at GameStop, Sneaker Junkies, hotel rooms, and jewelry.  By June 30, 2021, BRIMAGE's account balance was -$7.97.  These charges are not consistent with expenses for "payroll costs, rent/mortgage interest, utilities."

Fraudulent Check

46.     On or about July 19, 2023, A.C. opened an Eastern Bank account and provided a phone number ending in 6850 and an address in Boston as the home address.

47.     At that time, BRIMAGE lived at that Boston address.

48.     On various occasions from on or about July 22, 2023, to July 25, 2023, A.C.'s Eastern Bank account was accessed by BRIMAGE's IP address, 73.218.226.108, which was leased to BRIMAGE's Boston address.

49.     On or about July 24, 2023, at approximately 1:32 p.m., a co-conspirator messaged BRIMAGE on Instagram, "Let's do that eastern."

50.     On or about that same day, at approximately 7:25 p.m., a fraudulent check belonging to Victim 1 was deposited into A.C.'s Eastern Bank account.  The check was made payable to A.C. for $3,032.50.

51.     According to Victim 1, Victim 1 mailed the check in a USPS collection box outside the Grove Street Post Office in Wellesley on or about June 19, 2023.  Victim 1 confirmed that Victim 1 did not write the check to A.C.

52.     On or about July 25, 2023, at approximately 4:15 a.m., BRIMAGE and a co-conspirator entered the Eastern Bank at 1413 Tremont Street in Boston and withdrew $200 from A.C.'s account at the ATM.  According to Eastern Bank, limited funds were available for immediate withdrawal because Victim 1's check had a non-local routing number.

<u>COUNT ONE</u>
Bank Fraud
(18 U.S.C. § 1344)

The United States Attorney charges:

53.    The United States Attorney re-alleges and incorporates by reference paragraphs 1-16 and 46-52 of this Information.

54.    From on or about July 19, 2023, to July 25, 2023, in the District of Massachusetts, the defendant,

TYRONE BRIMAGE,

did knowingly execute, and attempt to execute, a scheme and artifice to defraud a financial institution, that is, Eastern Bank, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of Eastern Bank, by means of materially false and fraudulent pretenses, representations, and promises.

All in violation of Title 18, United States Code, Sections 1344.

11

## COUNT TWO
Bank Fraud
(18 U.S.C. § 1344)

The United States Attorney further charges:

55.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-16, and 29-32 of this Information.

56.     On or about August 8, 2020, in the District of Massachusetts, the defendant,

TYRONE BRIMAGE,

did knowingly execute, and attempt to execute, a scheme and artifice to defraud a financial institution, that is, Citizens Bank, and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of Citizens Bank, N.A., by means of materially false and fraudulent pretenses, representations, and promises.

All in violation of Title 18, United States Code, Sections 1344.

## COUNT THREE
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney further charges:

57.    The United States Attorney re-alleges and incorporates by reference paragraphs 1-16 and 39-45 of this Information.

58.    On or about May 13, 2021, in the District of Massachusetts, and elsewhere, the defendant,

TYRONE BRIMAGE,

having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit, a fraudulent Paycheck Protection Program loan application that contained materially false information for the purpose of executing the scheme to defraud.

All in violation of Title 18, United State Code, Section 1343.

<u>COUNT FOUR</u>
Wire Fraud
(18 U.S.C. § 1343)

The United States Attorney further charges:

59.    The United States Attorney re-alleges and incorporates by reference paragraphs 1-28 of this Information.

60.    On or about July 23, 2020, in the District of Massachusetts, and elsewhere, the defendant,

TYRONE BRIMAGE,

having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit, a fraudulent Pandemic Unemployment Assistance loan application that contained materially false information for the purpose of executing the scheme to defraud.

All in violation of Title 18, United State Code, Section 1343.

<u>COUNT FIVE</u>
Wire Fraud
(18 U.S.C. § 1343)

61.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-16, 33-38 of this Information.

62.     On or about November 16, 2020, in the District of Massachusetts, and elsewhere, the defendant,

TYRONE BRIMAGE,

having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit, a fraudulent Pandemic Unemployment Assistance loan application that contained materially false information for the purpose of executing the scheme to defraud.

All in violation of Title 18, United State Code, Section 1343.

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The United States Attorney further alleges:

63.     Upon conviction one or more of the offenses in violation of Title 18, United States Code, Section 1344, set forth in Counts One and Two, and Title 18, United States Code, Section 1343, set forth in Counts Three through Five, the defendant,

TYRONE BRIMAGE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following assets:

    a.  $83,449, to be entered in the form of a forfeiture money judgment;

64.     If any of the property described in Paragraph 65, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendant up to the value of the property described in Paragraph 65 above.

      All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United

States Code, Section 2461(c).

Respectfully Submitted,

JOSHUA S. LEVY
United States Attorney


By:    /s/ Lucy Sun
    Lucy Sun
    Philip C. Cheng
    Assistant United States Attorneys


Date: January 16, 2025